Youssef Hammoud, CA #321934
HAMMOUD LAW, P.C.
206 W. 4th St., 3rd Floor
Santa Ana, CA 92701
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorneys for Plaintiff,*
*Justice Hinojosa*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTICE HINOJOSA, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION, LLC, <br><br> Defendants. | No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Justice Hinojosa ("Plaintiff"), by and through the undersigned counsel, hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## **JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, Justice Hinojosa, is a natural person who resides in Clovis, California, within the confines of Fresno County. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Equifax is a business incorporated in Delaware. It maintains a principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax is registered to accept service at Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners GA 30092.

6. Defendant Equifax regularly assembles and evaluates consumer information to sell to third parties. Therefore, Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

7. Defendant Trans Union is a business incorporated in Delaware. It maintains a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union is registered to accept service at Prentice Hall Corporation located at 801 Adlai Stevenson Drive, Springfield, Illinois 36106.

8. Defendant Trans Union regularly assembles and evaluates consumer information to sell to third parties. Therefore, Trans Union is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

9. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

10.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

11.     Like many Americans, Plaintiff has dreams of homeownership.

12.     In 2021, Plaintiff observed as the housing market caused home prices to increase substantially and recognized that mortgage interest rates were at or near all-time lows.

13.     In early 2021, Plaintiff sought to take tangible steps toward homeownership.

14.     Specifically, in or around February 2021, Plaintiff opened a credit card account for the express purpose of continuing to establish and build her credit history in anticipation of an eventual home loan. By late 2021, Plaintiff felt financially prepared for homeownership and began taking the necessary next steps to accomplish her goal.

15.     In or around October 2021, Plaintiff began looking online into potential homes. Plaintiff was interested in purchasing a "fixer-upper" home in Old Town Clovis. In an effort to determine the appropriate price range, Plaintiff began the pre-approval process for a Fair Housing Act ("FHA") loan.

16.     Plaintiff was interested in a pre-approval for an FHA loan because she believed that the FHA loan, the low-interest rates at the time, and her credit score, would make the process of purchasing a home much smoother and easier for her as a first-time homebuyer.

17.     Plaintiff was unable to complete the pre-approval process online. She contacted her local bank, Educational Employees Credit Union ("EECU"), and the EECU representative communicated Plaintiff's credit score over the phone.

18.     Plaintiff was shocked to hear how low her score was. Plaintiff had purchased a BMW automobile one year prior, and her credit score at that time was "very good." In addition, as noted above Plaintiff had been actively working to continue building her credit.

3

19.     Plaintiff told the EECU representative that there must be some mistake regarding her credit score. In response, she was told that she should obtain copies of her credit reports.

20.     Plaintiff initially attempted to retrieve her credit reports online. When she went through the process of verifying her identity, the security questions posed by Defendants included questions about several accounts which Plaintiff did not recognize.

21.     Plaintiff eventually was able to request a physical copy of her credit reports to be sent to her via mail using AnnualCreditReport.com.

22.     Plaintiff ultimately obtained her Equifax credit report and reviewed the information contained therein. Plaintiff was astounded when she saw how low her credit scores were.

23.     Plaintiff initially reviewed her Equifax credit report and quickly identified several inaccuracies. She grew gravely concerned that she had been the victim of identity theft. This was particularly concerning given Plaintiff's homeownership aspirations.

24.     Plaintiff was shocked and upset to discover numerous tradelines on her Equifax credit report which she did not recognize.

25.     Specifically, Plaintiff noticed the following tradelines on her Equifax report, none of which belonged to her:

- Capital One account (account number 517805752967*, opened July 31, 2018);
- Noble Federal Credit Union account (account number 29006*, opened July 30, 2021);
- Two (2) Golden 1 Credit Union accounts (account number 22465*, opened May 24, 2020, and March 17, 2019);
- Home Depot account (account number 603532096868*, opened February 3, 2020);
- American Honda Finance account (account number 45352*, opened April 24, 2021);
- Samuels Jewelers account (account number 291370*, opened November 28, 2018); and,
- **Thirteen** (13) Navient accounts (account number 93575745741E0132*, opened May 25, 2021; account number 93575745741E0122*, opened January 3, 2020; account number 93575745741E0112*, opened June 4, 2019; account number 93575745741E0102*, opened February 15, 2019; account number 93575745741E0092*, opened September 27, 2018; account number 93575745741E0082*, opened October 2, 2017; account number 93575745741E0072*, opened October 3, 2016; account number 93575745741E0062*, opened October 3, 2016; account number 93575745741E0052*, opened October 2, 2015; account number 93575745741E0042*, opened October 2, 2015; account number

93575745741E0032*, opened August 18, 2014; account number 93575745741E0022*, opened August 18, 2014; and, account number 93575745741E0012*, opened August 18, 2014).

26. In total, of the twenty-five tradelines reported on Plaintiff's Equifax credit report, twenty tradelines – **eighty percent of all tradelines reported on Plaintiff's Equifax credit report** – were accounts that Plaintiff did not recognize at all because they did not belong to her.

27. Plaintiff noticed the following employers on her Equifax report, none of which were employers she had worked for:

- Sierra Sands USD
- Sierra Snds Unified
- Mendota Unified

28. Plaintiff noticed the following addresses on her Equifax report, neither of which she had ever resided at:

- 1793 NORWICH AVE, CLOVIS, CA 93611
- 289 W SANTA ANA AVE APT 210, CLOVIS, CA 93612

29. Plaintiff noticed that in addition to her own Social Security Number, a second Social Security Number was reported.

30. Plaintiff has only one Social Security Number. Upon information and belief, it is a red flag for potential fraud when a creditor obtains the information that a consumer is associated with more than one Social Security Number.

31. Plaintiff noticed, lastly, that Equifax report erroneously reported her name as Justin Hinojosa, her twin brother's name.

32. Concerned and worried with the inaccurate information about Plaintiff's identity which was Equifax was reporting in her credit report, Plaintiff sat down with her father approximately one week later and conducted an in-depth review of the tradelines listed on the report.

33. Upon information and belief, the tradelines not recognized by Plaintiff are accounts which

belong to her brother, Justin Hinojosa, which Plaintiff learned only after reviewing her credit report with her father. It was at that time that Plaintiff realized that the erroneously reported information – namely, the employers, addresses, and Social Security Number that Plaintiff had not recognized earlier – was all information which pertained to her brother.

34. Plaintiff and her brother are, in fact, separate human beings.

35. Concerningly, the tradelines which Plaintiff did not recognize accounted for a balance of approximately $173,022 being erroneously reported on Plaintiff's Equifax credit report.

36. Upon information and belief, Plaintiff's potential approval for a mortgage is dependent, in part, on her debt-to-credit ratio and her debt-to-income ratio.

37. According to an article on Equifax's website, "When evaluating your request for credit, lenders and creditors look at several factors, which may include your debt to credit ratio. **If your ratio is high, it's one indication you could be a higher-risk borrower who may have trouble paying back a loan because you have more debt**," and, "[Debt to income ratio is] one-factor **lenders may evaluate when deciding whether or not to approve your credit application**."[1]

38. Upon information and belief, Plaintiff's Equifax credit report reflects monthly payment obligations of $1,752. Approximately $1,273 of this amount is associated with the tradelines erroneously reported by Equifax.

39. Having grown increasingly upset after discovering such widespread inaccuracy, Plaintiff reviewed the credit inquiries which were reported on her Equifax credit report.

40. Plaintiff was, again, shocked and upset to discover several hard inquiries on her Equifax credit report which she did not recognize.

41. In total, **three-quarters** of all inquiries reported on Plaintiff's Equifax credit report, were inquiries which Plaintiff did not recognize at all. Upon information and belief, the inquiries reported

---

[1] https://www.equifax.com/personal/education/credit/score/debt-to-credit-ratio/

6

on Plaintiff's Equifax credit report were credit inquiries made at the direction and/or request of Plaintiff's brother, Justin Hinojosa.

42. Thereafter, Plaintiff obtained a copy of her Trans Union credit report. Upon review, Plaintiff observed that the litany of inaccuracies being reported on her Equifax report were similarly reported on her Trans Union report.

43. Upon review, Plaintiff learned that Trans Union had also included her brother's name on her credit report.

44. Plaintiff learned that Trans Union also erroneously reported her employer as "Sierra Sands USD" and/or "Sierra Snds Unified Schoo." At this point, Plaintiff recognized these as employers of her brother, Justin Hinojosa.

45. Plaintiff was upset to discover numerous tradelines on her Trans Union credit report which she did not recognize.

46. Specifically, Plaintiff noticed the following tradelines on her Trans Union report, none of which belonged to her:

- Capital One account (account number xxxxxxx2967, opened July 30, 2018);
- Noble Federal Credit Union account (account number xxxxxxx6142, opened June 30, 2021);
- Two (2) Golden 1 Credit Union accounts (account number xxxxxxx3802, opened April 30, 2020, and March 16, 2019);
- Home Depot account (account number xxxxxxx3365, opened February 2, 2020);
- American Honda Finance account (account number xxxxxxx3722, opened April 23, 2021);
- Samuels Jewelers account (account number xxxxxxx2953, opened November 27, 2018); and,
- **Thirteen** (13) Navient accounts (account number xxxxxxx0526, opened May 24, 2021; account number xxxxxxx0106, opened January 2, 2020; account number xxxxxxx0605, opened June 3, 2019; account number xxxxxxx0219, opened February 14, 2019; account number xxxxxxx0928, opened September 26, 2018; account number xxxxxxx1002, opened October 1, 2017; account number xxxxxxx1003, opened October 2, 2016; account number xxxxxxx1003, opened October 2, 2016; account number xxxxxxx1002, opened October 1, 2015; account number xxxxxxx1002, opened October 1, 2015; account number xxxxxxx0818, opened August 17, 2014; account number xxxxxxx0818, opened August 17, 2014; and, account number xxxxxxx0818, opened August 17, 2014).

7

47.     In total, of the twenty-five tradelines reported on Plaintiff's Trans Union credit report, twenty tradelines – **eighty percent of all tradelines reported on Plaintiff's Trans Union credit report** – were accounts which Plaintiff did not recognize at all.

48.     Upon information and belief, the tradelines not recognized by Plaintiff are accounts which belong to her brother, Justin Hinojosa.

49.     Concerningly, the tradelines which Plaintiff did not recognize accounted for a balance of approximately $173,578 being erroneously reported on Plaintiff's Trans Unions' credit report.

50.     According to an article on Trans Union's own website, "**Generally, the higher your debt-to-income ratio, the riskier you appear to lenders or creditors.**" [2]

51.     Having grown increasingly upset after discovering such widespread inaccuracy, Plaintiff reviewed the credit inquiries which were reported on her Trans Union credit report.

52.     Plaintiff was, again, upset to discover several hard inquiries on her Trans Union credit report which she did not recognize.

53.     In total, **two-thirds** of all inquiries reported on Plaintiff's Trans Union credit report, were inquiries which Plaintiff did not recognize at all. Upon information and belief, the inquiries reported on Plaintiff's Equifax credit report were credit inquiries made at the direction and/or request of Plaintiff's brother, Justin Hinojosa.

54.     Upon information and belief, Plaintiff's Trans Union credit report reflects monthly payment obligations of $1,752. Approximately $1,273 of this amount is associated with the tradelines erroneously reported by Trans Union.

55.     Approximately 1-2 weeks after the in-depth review with her father, Plaintiff was able to meet with her twin brother Justin to verify that accounts reflected on Plaintiff's credit report did indeed belong to her brother.

---

[2] https://www.transunion.com/article/credit-dorner-key-rates-and-ratios-simplified

56.     Upon information and belief, Plaintiff's Experian credit report does not report **any** of the twenty (20) tradelines erroneously reported by Defendants.

57.     Upon information and belief, Plaintiff's Experian credit report reflects monthly payment obligations of only $479.

58.     Upon information and belief, the three major consumer reporting agencies (Experian, Trans Union, and Equifax) share consumer information with each other. Defendants should have known that they had mixed the Plaintiff's file with someone else when Plaintiff's Experian credit report did not include twenty tradelines, multiple inquiries, and when Experian's credit report include a substantially lower balance and substantially lower monthly payment obligations.

59.     At the time it compiled and sold each consumer report about the Plaintiff to each potential creditor, Defendants already knew that its loose matching algorithms had previously frequently mixed consumer information with that of other consumers.

60.     With respect to the Social Security Number reporting, upon information and belief, Defendants had no information upon which to report that the Plaintiff had used more than one Social Security Number and it had never received more than one Social Security Number belonging to the Plaintiff.

61.      Upon information and belief, Defendants, on their own volition, decided to include an additional Social Security Number purportedly ascribed to the Plaintiff, thus raising the possibility of fraud to potential creditors, and increasing the possibility of mixing accounts belonging to another consumer.

62.     Defendants have intentionally established procedures for collection and reporting of Social Security Number information in a way to make more money for themselves, to create greater economic value for its paying clients that purchase consumer reports, and to shift the cost of finding out about inaccuracies, disputing inaccuracies, and correcting the consumer reports off onto

unwitting consumers.

63. Defendants have been on notice about the specific and systemic inaccuracies and limitations of its gathering, compiling, and reporting of Social Security Number and other third-party information since at least 2009, *Soutter v. Equifax Information Services, LLC* and *Soutter v. Trans Union, LLC*.

64. Defendants have been on substantial notice for decades that their business practices and procedures, including loose matching algorithms, give rise to mixing the files of consumers.

65. Upon information and belief, in addition to being the victim of a "mixed file," Plaintiff has also been the victim of Defendants blindly reporting untrue information indicating a high risk of fraud.

66. Upon information and belief, Defendants have agreements with each and every one of the creditors to whom it sold an outrageously erroneous copy of the Plaintiff's consumer report.

67. It is illegal for Defendants to sell Plaintiff's consumer report to any of their subscribers unless they have a permissible purpose to do so under the limited circumstances described in 15 U.S.C. § 1681b.

68. Plaintiff's Equifax credit report is evidence that Equifax sold Plaintiff's consumer report to at least four (4) creditors without authorization, or any other permissible purpose provided in 15 U.S.C. § 1681b.

69. Plaintiff's Trans Union credit report is evidence that Trans Union sold Plaintiff's consumer report to at least four (4) creditors without authorization, or any other permissible purpose provided in 15 U.S.C. § 1681b.

70. Plaintiff has expended substantial time and significant efforts in reviewing her credit reports to determine what information has been erroneously reported about her. This includes time spent reviewing her credit reports in-depth with her father, as well as time spent contacting her brother,

Justin Hinojosa, to determine whether the information in Plaintiff's credit report actually belongs to Justin.

71. Similarly, Plaintiff has expended an inordinate amount of time and effort attempting to resolve these issues.

72. Plaintiff works full-time as an Administrative Coordinator at the California Autism Center, with working hours from 7:00 AM – 5:00 PM, Monday through Friday.

73. Plaintiff was forced to spend several lunch breaks contacting Defendants to try to correct the erroneous information in her credit reports. Defendant spent several hours on hold with Defendants, and in fact on more than occasion had to notify her supervisor that Plaintiff needed to extend her lunch break in order to stay on the phone and communicate with Defendants.

74. During these phone calls, Plaintiff communicated to Defendants regarding the errors in her credit reports, including that her Social Security Number and name were incorrect as reported.

75. Despite a phone call from Plaintiff disputing the information in her credit reports, Defendants did not correct the erroneous information.

76. After directly contacting Defendants and disputing as detailed above failed to resolve the issues facing Plaintiff, Plaintiff was forced to again skip lunch several times in order to identify a legal advocate with expertise in resolving the kinds of issues she faced. Plaintiff could not identify any local firms in the Fresno, California area and contacted several firms before ultimately finding a firm which had experience in these matters.

77. Upon information and belief, Equifax does not maintain reasonable procedures to assure it reports consumer information with maximal accuracy because it would be less profitable to verify the information provided by furnishers before publishing it.

78. Upon information and belief, Trans Union does not maintain reasonable procedures to assure it reports consumer information with maximal accuracy because it would be less profitable

to verify the information provided by furnishers before publishing it.

79. As a direct result of the information erroneously reported by Defendants, Plaintiff's credit score dropped significantly.

80. The harm to Plaintiff's credit score was extremely upsetting and stressful, as Plaintiff had been working toward homeownership.

81. The shock of learning that the overwhelming majority of Plaintiff's Equifax and Trans Union credit reports contained information about another person's credit history caused Plaintiff grave concern regarding her potential homeownership.

82. After learning of the inaccuracies contained in her Equifax and Trans Union credit reports, Plaintiff was forced to delay any further steps toward homeownership.

83. For many consumers, the home-buying process starts with an application to be pre-approved for a mortgage. As a direct result of the inaccuracies on Plaintiff's consumer reports, she has been deprived of the opportunity to obtain a pre-approval.

84. Plaintiff is concerned that if she does complete an application for a mortgage, she will receive less favorable terms as a result of the existing inaccuracies in her Equifax and Trans Union credit reports.

85. Plaintiff originally hoped to move into a new house at the beginning of 2022. In or around August 2021, Plaintiff began renting a spare room in the home of a friend, with the understanding that she would be able to rent the room through the end of 2021. Plaintiff expected this would give her ample time to obtain pre-approval and complete the home buying process. Plaintiff did not anticipate that burdensome issues with her credit would cause substantial delays.

86. Rather than moving into a new home around the beginning of the year as she intended, Plaintiff instead continues to rent a spare bedroom in the home of a friend. Plaintiff did not wish to needlessly spend money on an expensive apartment rental, given her desire to save money for the

eventual purchase of a home.

87. Plaintiff has lost sleep and suffered severe stress as a result of the ordeal she has been put through. She spends a significant amount of time wondering when or if the problems facing her will be resolved. Plaintiff stays up at night worrying if she will be able to find a place to live.

88. In addition to the very real concerns Plaintiff holds about delays and potential barriers to her home ownership, Plaintiff has experienced stress regarding her current living arrangements. Plaintiff is currently renting a single bedroom room from a friend. Plaintiff did not obtain a formal rental agreement securing her housing, as her living situation was originally meant to be short-term. Plaintiff suffers from stress related to the uncertainty of whether she will continue to have safe, secure housing.

89. As a consumer, Plaintiff should not have been prevented from taking steps toward fulfilling her dream of homeownership.

90. As a potential homeowner, Plaintiff should not have been prevented from taking advantage of the current low mortgage interest rates.

91. As a direct result of Defendants' conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: reduced creditworthiness, reduced credit score, stress, anxiety, frustration, sadness, embarrassment, humiliation, sleepless nights, and a substantial amount of wasted time.

**COUNT I**
**Defendants' Violations of 15 U.S.C. § 1681e(b)**

92. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

93. The FCRA requires consumer reporting agencies, like Equifax and Trans Union, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with

maximal accuracy. 15 U.S.C. § 1681e(b).

94. Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

95. Upon information and belief, Equifax and Trans Union have been sued by other consumers in the past who have alleged its dispute procedures were unreasonable and violative of the FCRA.

96. Therefore, Equifax and Trans Union had actual notice of their deficient procedures.

97. In this case, however, Equifax and Trans Union received actual notice that their procedures were unreasonable as applied to Plaintiff.

98. It is wholly unreasonable to maintain procedures that allow a consumer reporting agency to report inaccurate information about a consumer.

99. Specifically, it was wholly unreasonable for Equifax and Trans Union to report an inaccurate name, inaccurate addresses, and inaccurately report twenty tradelines on Plaintiff's credit report despite possessing information in their own files that indicated such information did not belong to Plaintiff.

100. As a result of Equifax and Trans Union's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

101. Equifax and Trans Union's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

102. Alternatively, Equifax and Trans Union's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

103. In any event, Equifax and Trans Union are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

**COUNT II**
**Defendants' Violations of 15 U.S.C. § 1681b**

104. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

105. Based upon the facts described in detail in this Complaint, Equifax and Trans Union have violated the Plaintiff's rights by selling and publishing her consumer report to numerous third parties without a permissible purpose to do so. 15 U.S.C. § 1681b.

106. The FCRA explicitly limits 1) the purposes for which a consumer reporting agency may furnish a consumer report and 2) for which a person may request a consumer report.

107. The FCRA explicitly states that consumer reporting agencies, like Equifax and Trans Union, may only furnish a consumer report for a permissible purpose.

108. The FCRA includes an exhaustive list of permissible purposes for furnishing a consumer report.

109. Specifically, 15 U.S.C. § 1681b(3) permits Defendants to furnish a consumer report "[t]o a person which they have reason to believe—

    A. intends to use the information in connection with a credit transaction **involving the consumer on whom the information is to be furnished** and involving the extension of credit to, or review or collection of an account of, the consumer; or …

    F. otherwise has a legitimate business need for the information— (i) in connection with a business transaction that is **initiated by the consumer**; or (ii) to review an account to determine whether the consumer continues to

meet the terms of the account."

110. Upon information and belief, Equifax and Trans Union violated 15 U.S.C. § 1681b each and every time they furnished Plaintiff's consumer credit information in connection with the aforementioned erroneous hard inquiries.

111. Upon information and belief, each of the erroneous hard inquiries were initiated by Plaintiff's twin brother or some other third party.

112. Upon information and belief, Equifax and Trans Union provided Plaintiff's consumer credit information to a third party after it received her twin brother's Social Security Number, name, and birthdate.

113. There are no circumstances under which Equifax and Trans Union should have furnished Plaintiff's consumer credit information to someone requesting her twin brother's information.

114. As a result of Equifax and Trans Union's violations of 15 U.S.C. § 1681b, Plaintiff suffered injuries that resulted in actual damages, all of which have been described in detail in this Complaint.

115. Equifax and Trans Union's violations of the FCRA were willful because they have long been on notice that their policies and procedures put consumers at a risk of having their personal consumer report information published to third parties without a permissible purpose.

116. Equifax and Trans Union's violations of 15 U.S.C. § 1681b were willful. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

117. Alternatively, Equifax and Trans Union's violations of 15 U.S.C. § 1681b were negligent. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

118. In any event, Equifax and Trans Union are each liable for Plaintiff's reasonable attorney's

fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
### Defendants' Violations of 15 U.S.C. § 1681i

119. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

120. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their credit file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

121. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

122. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from Plaintiff's credit report.

123. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

124. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

125. As a result of Equifax and Trans Union's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

126. Upon information and belief, Equifax and Trans Union knew or should have known, about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial

Protection Bureau (CFPB), and in well-established case law.

127. Therefore, Equifax and Trans Union acted consciously in failing to adhere to their obligations under the FCRA.

128. Equifax and Trans Union's violations of 15 U.S.C. § 1681i were willful. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

129. Alternatively, Equifax and Trans Union's violations of 15 U.S.C. § 1681i were negligent. Therefore, Equifax and Trans Union are each individually liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

130. In any event, Equifax and Trans Union are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## **TRIAL BY JURY**

131. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Justice Hinojosa, respectfully requests judgment be entered against Defendants, for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F.  Any other and further relief as the Court may deem just and proper.

Dated: February 15, 2022                     Respectfully Submitted,

                                                    HAMMOUD LAW, P.C.

                                                   Youssef Hammoud, CA #321934
206 W. 4th St., 3rd Floor
Santa Ana, CA 92701
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorneys for Plaintiff,*
*Justice Hinojosa*